FILED

2022 FEB -1  PM 3: 51

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____ RmH

SIAKA MASSAQUOI
C/O 269 S. BEVERLY DRIVE #1298
BEVERLY HILLS, CA, 90621
TEL: 3107507362
EMAIL: SIAKAMASSAQUOI@GMAIL.COM

*Plaintiff Pro Se*

LARRY KLAYMAN, ESQ.
FREEDOM WATCH, INC.
7050 W. PALMETTO PARK RD
BOCA RATON, FL, 33433
TEL: 561-558-5336
EMAIL: LEKLAYMAN@GMAIL.COM

*Of Counsel/ Pro Hac Vice To be Filed*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| SIAKA MASSAQUOI<br>as a natural person<br>North Hollywood, California<br>*On behalf of himself and all others similarly situated.* | |
| Plaintiffs, | **Case No: 2:21-cv-8569** |
| v. | **Certification of a Class of Similarly Situated Plaintiffs Requested** |
| CHRISTOPHER A. WRAY,<br>935 Pennsylvania Avenue, NW<br>Washington, DC 20535-0001 | |
| and | |
| CHAD WARREN.<br>11000 Wilshire Blvd #1700<br>Los Angeles, CA 90024 | |
| and | |
| UNIDENTIFIED FBI AGENTS #1 THROUGH #20 | |
| Defendants. | |

## AMENDED COMPLAINT

1

I.          **INTRODUCTION**

Plaintiff Mr. Siaka Massaquoi ("Massaquoi") of North Hollywood, California, on behalf of himself and all of those similarly situated ("Plaintiffs") brings this action against Director of the Federal Bureau of Investigation ("FBI") Christopher A. Wray, FBI Special Agent Chad Warren of The Los Angeles FBI Field Office, and 11 other FBI agents to be named later, in their individual capacities, for violations of the Plaintiffs' constitutional rights under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Government officials, employees, and their agents who commit unconstitutional acts are not legally immune from suit and are subject to being held personally liable. *See Trulock vs. Freeh et al*, 275 F.3d 391 (4th Cir. 2001).

II.         **JURISDICTION AND VENUE**

1.          This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

2.          Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3), and (e) because the lead Plaintiff resides in this judicial district, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, the Defendants are subject to personal jurisdiction in this District, and venue is proper against the U.S. Government in any judicial district under 28 U.S.C. § 1391(e).

III.        **PARTIES**

**Plaintiff**

3.          Plaintiff Siaka Massaquoi ("Massaquoi ") is an individual, a natural person, who at all material times was and is now a citizen of California and resident of North Hollywood, California.

4.          Massaquoi is an African-American, an actor, and a former high school football star from the mid-west.

5.      Massaquoi is a former Evanston Township High School football star from Illinois. Massaquoi led the Wildcats team to an undefeated regular season back in 1997.

6.      That year, Massaquoi was named the player of the year by the News-Gazette and homecoming king at ETHS.

7.      He continued his football career by playing for the University of Iowa and attending the academic institution on scholarship.

8.  Today, Massaquoi is an accomplished and successful actor.

**Defendants**

9.      Defendant Christopher A. Wray ("Wray") is an individual and is being sued individually and in his individual capacity as of Director of the FBI. Wray is being sued in his individual capacity.

10.     Defendant Chad Warren ("Warren") is an individual and is being sued individually and in his individual capacity as a Special Agent for the FBI who operates out of the Los Angeles Field Office of the FBI. Warren is being sued in his individual capacity.

11.     Defendants include approximately a dozen or more FBI agents other than Warren who raided Massaquoi's home on June 10, 2021, but did not give their names that the Plaintiff recalls.

12.     They are each sued as UNIDENTIFIED FBI AGENTS #1 THROUGH #20 and are being sued in their individual capacities.

IV.    **STANDING**

13.     The lead Plaintiff and Members of the Class have standing to bring this action because they have been directly affected, harmed, and victimized by the unlawful conduct of the Defendants complained of herein.

14.     Their injuries are proximately related to the conduct of Defendants, each and every one of them, jointly and severally.

## V.    FACTS

### Background Facts

15.    A violation of constitutional rights even for brief periods is redressable and damages are presumed. *See, e.g., Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009)

16.    On January 6, 2021, hundreds of thousands, estimated as high as one million, U.S. citizens gathered in Washington, D.C. to exercise their civil and constitutional rights guaranteed under the First Amendment to the U.S. Constitution to expression of free speech (well-established to include both verbally spoken and written speech and also expressive action), to peaceably assemble, and to petition their government for redress of grievances.

17.    Like major demonstrations before in Washington, D.C., U.S. citizens numbering as high as hundreds of thousands  by some reasonable estimates were 99.95% peaceful and law-abiding.

18.    Lead Plaintiff Massaquoi sues on behalf of and asks for the certification of a class consisting of those who were peacefully protesting in Washington, D.C. on January 6, 2021, but who did not commit any felony crimes or engage in any violence, but who are being terrorized and chilled in the exercise of their rights, harassed, and targeted by these Defendants for peacefully expressing political opinions and ideologies in order to quash all dissent from We the People to what is perceived to be corruption in government.

19.    During December 2020, no later than December 23, 2020, but on information and belief starting much earlier, publicity, marketing, advertising, organizing, and/or recruiting was spread throughout the country encouraging U.S. citizens to come to Washington, D.C. on January 6, 2021, for a variety of separate and independent peaceful demonstrations planned for different locations and different times from January 5-6, 2021.

20.    Plaintiff Massaquoi and others similarly situated chose to exercise their constitutionally protected right of free travel and association to come to Washington, D.C., and

participate in the plans for peaceful demonstrations at the U.S. Capitol and the Ellipse near the White House.

21.     While there were some people who chose to enter and engage in acts of violence in the U.S. Capitol, Plaintiff Massaquoi was not among those involved in any such conduct.

22.     All Plaintiff Massaquoi did was exercise his right to peacefully assemble and protest under the First Amendment to the Constitution.

23.     After the events of January 6, 2021, Defendant Wray, in an effort to save his own job and for other improper and unlawful reasons, personally ordered the violation of constitutional rights of countless persons who simply happened to be in the District of Columbia on January 6, 2021, including Plaintiff Massaquoi.

24.     Defendant Wray is directly and personally involved in the commission of the constitutional violations alleged herein as they pertain to Plaintiff Massaquoi, as well as Members of the Class. Defendant Wray has made public statements and thus admissions threatening Plaintiff Massaquoi and other Members of the Class:

> "We know who you are if you're out there, and FBI agents are coming to find you."[1]

> "My advice to people who might be inclined to follow in the footsteps of those who engaged in the kind of activity we saw last week is stay home....Look at what's happening now to the people who were involved in the Capitol siege."[2]

> "Our posture is aggressive. It's going to stay that way though the inauguration. So in that vein, we and our partners have already arrested more than 100 individuals for their criminal activities in last week's siege of the Capitol and continue to pursue countless other related investigations."[3]

> **The FBIs Agents, analysts, and professionals alongside our partners have been working around the clock to track down those who participated in the attack to hold them accountable, we've already made over 500 arrests, with more sure to come"**

> "...Over the past 3 years we've doubled our domestic terrorism investigations and

---

[1] https://www.cnn.com/2021/01/14/politics/fbi-director-wray-us-capitol-suspects/index.html
[2] *Id.*
[3] *Id.*

arrests. In no small part because of the rise in racially and ethnically motivated violent extremists, which I elevated to our highest threat priority level back in 2019, and because of the rise in violence from anti-government anti-authority actors over the past year..."[4]

25.     While testifying before Congress, Defendant Wray stated that mostly white supremacists (racially motivated violent extremism) was the FBI's top priority. "It is our highest threat priority level, commensurate with ISIS...and it is certainly true in the last few years the most lethal attacks here in the homeland have been by individuals in that racially motivated extremist category, specifically for advocating for superiority of the white race."[5]

26.     In this regard, Defendant Wray has turned the FBI into what is in effect his own personal "Secret Police" or "Gestapo" to target people who were protesting in the District of Columbia on January 6, 2021.

27.     As reported by NBC, Defendant Wray and the FBI have even resorted to pressuring family and friends of protestors to turn them in. "The FBI has been leaning on spouses, siblings, children and former romantic partners who spotted their loved ones assaulting the Capitol and responded by dropping a dime on them."[6] This is reminiscent of the tactics used by the Third Reich prior to and during World War II and the Holocaust.

28.     On information and belief, he is doing so to appease President Biden, his administration and their leftist allies and supporters, in an effort to save his own job as the Director of the FBI, as well as for other improper reasons.

29.     Yet, Defendant Wray's directives and orders  have resulted in the constitutional violations of countless people who did not engage in any felonious criminal activity or violence on January 6, 2021, including Plaintiff Massaquoi and Members of the Class.

_____

[4] https://www.youtube.com/watch?v=xBUYTBCqsz0
[5] https://www.courthousenews.com/fbi-treats-white-supremacists-like-isis-except-when-it-doesnt/
[6] https://www.nbcnews.com/news/amp/ncna1254597#aoh=16261485808812&referrer=https%3A%2F%2Fwww.google.com&amp_tf=From%20%251%24s

6

**<u>Facts Pertaining to Violations of Plaintiff Massaquoi's Constitutional Rights</u>**

30.  On the morning of June 10, 2021, starting at approximately 5:45 AM local time, the home of Plaintiff Massaquoi in North Hollywood was raided by more than a dozen heavily armed FBI agents, possibly as many as 20 he recalls.

31.  The FBI agents came in forcibly with guns drawn.

32.  The team of about a dozen identified themselves as with the FBI.

33.  The apparent leader of the dozen heavily-armed FBI agents identified himself as Chad Warren of the FBI's Los Angeles Field Office.

34.  During the June 10, 2021, intrusion and search of Massaquoi's home that morning, FBI Special Agent Chad Warren did most of the talking.

35.  FBI Special Agent Chad Warren was mostly in charge of the actions of the FBI agents on scene at Massaquoi's home.

36.  In the home at the time with Massaquoi were his roommates Brian, Chris, and Courtney and his two godsons.

37.  Notably, the FBI made no attempt to simply ask Massaquoi for an interview, but woke up the residents early in the morning and barged into the house.

38.  The FBI agents handcuffed the adults in front of the children and took the adults outside of the house not fully dressed.  The Plaintiff Massaquoi, who was among those handcuffed, was forcefully taken outside with no shirt or shoes.

39.  The FBI agents held the residents outside, they said, while they "cleared" the house, as they described it.

40.  Massaquoi asked to see the warrant multiple times while being outside, which the lead agent Warren replied "We'll get you a copy after we clear the house."

41.  On information and belief, the warrant was obtained by Defendants through

intentional lies if not outright fraud, since, as set forth and shown below, there was absolutely no probable cause to suspect Plaintiff Massaquoi of having committed any crime.

42.     Massaquoi requested to talk to his lawyer, to which Warren responded "this is not an arrest" and "you don't need one at this time." Of course, what occurred was false arrest.

43.     That was after the FBI agents handcuffed Massaquoi and the other adult residents.

44.     Massaquoi said "I don't care, I want to talk to my lawyer."

45.     The FBI agents then moved the Plaintiff Massaquoi back inside his house and under apparent threat sat him down on the couch.

46.     The FBI agents then began to bring the other residents of the house back into the house. They begrudgingly allowed Brian to take his kids to his ex-wife's house and allowed Chris and Courtney to leave as well.

47.     Then the agent Warren and his partner took Plaintiff Massaquoi outside to his back patio to "talk" as they put it.

48.     Meanwhile, the other FBI agents illegally and unconstitutionally searched the entire house and collected items they took from around the house onto the kitchen table.

49.     The FBI agents seized and removed, as shown in the "Receipt for Property" numbered 266T-LA-3399995 and dated June 10, 2021 (these being the minimal explanations on the form):

a)   Samsung phone with charger
b)   Red MAGA hat
c)   Two radios with charger
d)   Lexar USB
e)   Black USB
f)   Purple USB
g)   Micro SD card
h)   HP computer with charger serial number 5CD9261PX4
i)   DELL laptop
j)   Black micro SD adapter
k)   Micro SD adapter
l)   Micro SD adapter with case

m) Red portable drive
n) Composition book
o) Samsung galaxy S8

50.     This "Receipt for Property" numbered 266T-LA-3399995 is signed by Defendant Warren.

51.     The descriptions by the FBI on "Receipt for Property" numbered 266T-LA-3399995 are inadequate to identify the property seized (except for the computer with serial number) and the seizure is unreasonable and improper for that reason as well, notwithstanding the lack of probable cause for the search and seizure.

52.     Massaquoi, through  counsel, has demanded the immediate return of these items unlawfully seized without probable cause from Massaquoi's home, but Defendants have refused to comply, causing continuing severe damage to Plaintiff.

53.     Whatever may have been the obsolete practices of yesteryear, today's computer technology and techniques provides for the quick creation of a "mirror image" of any data storage, in which the entire contents of a computer hard drive, or thumb drive or other data storage device are duplicated or cloned entirely.

54.     A "mirror image" is not merely a copy of data but an exact duplicate in which all aspects of the device is precisely copied, including the unseen internal structure and indices and deleted data blocks or sectors.

55.     Massaquoi's electronic devices cannot provide any evidentiary value apart from the data that a mirror image would preserve, even were there probable cause to search them, which there was not.

56.     Therefore, the Defendants can immediately return Massaquoi's property after making "mirror images" of the data storage devices in less than a few hours.

57.     Even assuming that the search and seizure was proper, which it was not, the

Defendants have no legal basis to deprive the Plaintiff of his property and his data stored on them.

58.     Concerning the incursion of FBI agents into his home on June 10, 2021, Massaquoi explains: "I was emotionally raw and trying my best to stay calm but was extremely upset."

59.     Warren then asked the Plaintiff Massaquoi if he went to D.C. to "disrupt a federal proceeding" to which Massaquoi responded "What? Hell no, I was there to stand outside and yell that they were assholes."

60.     FBI Special Agent Warren illegally and unconstitutionally interrogated Massaquoi despite Massaquoi having requested the assistance of a lawyer and having been handcuffed previously.

61.     Then Agent Warren raised the topic with Massaquoi of Russ Taylor who had been raided by the FBI in February 2021.

62.     Agent Warren explained that the reason that "they were there" was because of the fact that Massaquoi was on a Telegram group with Russ Taylor.

63.     A law enforcement source admitted to the Los Angeles Times that "The raid took place because of the two men's associations on "a social media app," according to the law enforcement source.["][7]

64.     Thus, Defendants illegally and unconstitutionally invaded Plaintiff's home only because he belonged to a group on a communication platform.

65.     Telegram is an alternative social media system which provides text messaging services and internet-based telephone calls, usually running on a smart cell phone as an "app" or

---

[7] See Richard Winton and Anita Chabria, "FBI raids home of L.A.-based actor who entered Capitol Jan. 6 with right-wing protesters," June 12, 2021, Los Angeles Times, https://www.latimes.com/california/story/2021-06-12/fbi-raids-home-of-los-angeles-based-actor-who-entered-u-s-capitol-on-jan-6

separate application software.

66.   However, Telegram also allows text messages to be sent to all of a user's followers as a group, indiscriminately, rather than simply a text message from one person to another, or to all of the members of a topical or membership group.

67.   Because of the design of Telegram, messages can be and often are broadcast out to a group without targeting a specific individual recipient or knowing if any particular individual ever read the message.

68.   The FBI agents asked Massaquoi if he knew about the text sent over Telegram about "How to bring weapons in without getting caught."

69.   Massaquoi denied having seen or read such a text and retorted "Do you have Telegram?" and the FBI Special Agent answered said "yes."

70.   Massaquoi then asked "what's it like when you miss a day and all those messages add up?" and "you don't go through all of them?"

71.   Agent Warren agreed with Massaquoi's explanation.

72.   Thus, the Defendants knew that there was insufficient probable cause to request, issue, or execute the search warrant based upon someone else's messages that Massaquoi might or might not have read.

73.   Efforts of attendees at an event gathering up to hundreds of thousands of people to be able to talk with each other, as people do at sporting events, festivals, hiking, or other gatherings, are, by themselves, incapable of supporting probable cause to investigate or search anyone.

74.   People at an event keeping in touch with each other is an exercise of free speech and peaceable assembly.

75.   Next in that conservation, after Massaquoi asked to talk to a lawyer, Defendant

FBI Special Agent Warren asked if Massaquoi entered the U.S. Capitol building.

76.     Massaquoi responded "what do you mean entered?" and gestured with his hand holding out his phone, saying "like this" while holding his arm extended.

77.     That is, Massaquoi responded in effect by his gesture that he had peered into an open door, walked only a few steps in the U.S. Capitol, and took photographs and video with his smart phone. Then, per the request of law enforcement officers, moved away from the doorway. (Verified by Plaintiff's video).

78.     It is now well-established that most of the U.S. Capitol Police at some entrances cheerfully welcomed and let in the demonstrators in through some entrances of the U.S. Capitol on January 6, 2021, the U.S. Capitol being normally a public building.

79.     Plaintiff Massaquoi believes that at all times, he complied with the law, and only took a few steps into the U.S. Capitol to record on this phone because law enforcement officers were inviting people in.

80.     Plaintiff Massaquoi complied immediately with all directives from the law enforcement officers.

81.     Because the U.S. Capitol building is known nationwide as a public building normally open to and welcoming the public, known as "the People's House," most citizens who do not live in Washington, D.C., innocently assumed that they could enter the building, as they have described in news media interviews.

82.     Indeed for the same reason, it appears that some members of the U.S. Capitol Police also believed that the public should be welcomed and invited in to "the People's House."

83.     It is now well-established that most of the people who peaceably entered the U.S. Capitol and/or were welcomed into the building carefully walked within the velvet crowd-control ropes and did not stray out of the marked walkways, took selfie photographs sometimes with

members of the U.S. Capitol Police, and generally acted as peaceable, innocent, wide-eyed tourists sight-seeing in the building.

84.     Therefore, the Defendants knew that there was insufficient probable cause to request, issue, or execute the search warrant based merely upon someone entering the U.S. Capitol building on January 6, 2021, when it is proven by videotape that some of the U.S. Capitol Police authorized to control the entrances cheerfully welcomed and invited visitors into the building and allows those members of the public to sightsee in the building as tourists on January 6, 2021, chatted with those who entered, and took photographs with those members of the public.

85.     The actions of some of the U.S. Capitol police welcoming and inviting people into the building defeat any charge of trespass or similar statutes and render those being inside the building innocent unless they committed some other crime and/or broke in through other entrances where they were not welcomed in.

86.     On information and belief, these unconstitutional and illegal actions are being repeated across the country in efforts against anyone who attended the mostly-peaceful demonstrations in Washington, D.C., on January 6, 2021, sowing fear among U.S. citizens who peacefully exercised their constitutional rights to petition their government and express their viewpoint.

**Facts Pertaining to Plaintiff Being Previously Targeted Due to His Political Beliefs**

87.     Previously, on September 17, 2020, Massaquoi had been publicly identified in political documents posted prominently on the internet as working on the petition to recall California Governor Gavin Newsom and also exposing that the Secretaries of State of several states colluded with social media giants to censor him and other political conservatives, so as to improperly influence the election for U.S. President.

88. Massaquoi has been targeted as a conservative African-American to try to bury the fact that Americans of all races and religions support the return of America's governance to the people under the populist movement of Make America Great Again promoted by Donald Trump.

89. Massaquoi has been targeted as an African-American conservative challenging the established political powers seeking to recall Governor Gavin Newsom.

90. On February 2, 2021, the Plaintiff Massaquoi attended and worked in organizing another recall petition event (one of many he worked at) and was singled out for special notice and attention by two City Council members. A sheriff's deputy    wrongfully issued Massaquoi a $300 citation for not wearing a mask outdoors in public, and the deputy explained to Massaquoi that the two City Council members had called the Sheriff's office. Massaquoi could see the two City Council members maliciously watching to make sure that Massaquoi received a citation.

91. Ever since then, Massaquoi has been on the Department of Transportation Security Administration's flight security list and has been unable to get on airplanes without going through around 45 minutes of extended security.

**Facts Pertaining to Plaintiff Massaquoi's Privacy Act Request**

92. On June 29, 2021, counsel, on behalf of Plaintiff Massaquoi made a request under the Privacy Act to the Defendants to provide and return "any and all documents that refer or relate to my client him including but not limited to Section 302 reports, affidavits etc," as well as his property. Exhibit 1.

93. Defendants have denied Plaintiff Massaquoi's Privacy Act request, in effect stating that the search warrant, which is open-ended, is controlling. Exhibit 1. The Defendants thus refused to return Plaintiff Massaquoi's property, which had been seized and retained without

probable cause. Nor have they provided the requested Section 302 reports and documents concerning Massaquoi.

## VI.    CLASS ALLEGATIONS

94.    Plaintiff Massaquoi and Members of the Class bring this lawsuit pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of the following proposed class (the "class") consisting of those who were in the District of Columbia on January 6, 2021 to peacefully protest and who did not commit any crimes or engage in any violence, but like him are being terrorized, chilled in the exercise of their constitutional rights of free speech including expressive conduct, peaceable assembly, and petition to the government for redress of grievances, harassed, investigated and targeted by these Defendants for peacefully expressing political opinions disliked by the predominantly leftist political elite, through Defendants' campaign of intimidating search warrants and even arrests, having their residence and personal effects illegally searched and seized without probable cause and without due process of law.

95.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the class may be expanded or narrowed by amendment or amended complaint.

96.    <u>Numerosity</u>. The Members of the Class are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff and the class alleges that the class contains hundreds if not thousands of Members of the Class. Although the precise number of Putative Class Members is unknown to Plaintiff and the class, the true number of Putative Members is known by Defendants, and thus, may be notified of the pendency of this action by first Class mail, electronic mail, social media, and/or published notice.

97.    Existence and predominance of common questions of law and fact. Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Putative Class Members. These common legal and factual

15

questions include, but are not limited to, the following:

a)      Unconstitutional searches and seizures of their residences, property, and/or papers.

b)      A failure of probable cause for searches and seizures.

c)      A failure of due process for searches and seizures.

d)      Defendants' intent to silence, intimidate, and chill the people's expression of opinions that the Defendants and political elites don't want to be heard.

e)      Entering the U.S. Capitol building on January 6, 2021, with an invitation or other actions by U.S. Capitol Police welcoming the class member into the building defeating any legal claim of trespass or similar statute.

f)      Gathering on U.S. Capitol grounds on January 6, 2021, pursuant to the permission granted through a permit for the gathering apparently issued by the U.S. Capitol Police.

g)      The Defendants' attempt to intentionally confuse peaceful protestors who gathered on January 6, 2021, in the U.S. Capitol with the extremely small percentage who committed trespass, the smaller percentage who committed property damage, and the even smaller percentage who physically interacted with police.

h)      Handcuffing, frightening, humiliating, and terrorizing persons not charged with any crime during execution of a search warrant for information.

98.     Typicality. Plaintiff's and the class's claims are typical of the claims of the other Members of the Class.

99.     Adequacy of representation. Plaintiff and the class will fairly and adequately protect the interests of the class. Further, Plaintiff and the class have had no interests that are antagonistic to those of the class.

100.    Superiority. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Aside from the intangible deprivation of constitutional rights, the damages or other financial detriment suffered by individual Putative Class Members are relatively small compared to the burden and expense that would be entailed by individual

litigation of their claims against Defendants.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*(Bivens – First Amendment Retaliation)*

101.   Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including in other causes of action, and incorporate them herein in support of this count with the same force and affect, as if fully set forth herein again at length.

102.   The Defendants, acting in concert, broke into Massaquoi's house at around 5:45 AM on June 10, 2021, to chill, silence, and retaliate against the exercise of free speech and assembly by Massaquoi and other U.S. citizens that disagree with the viewpoints and agendas of elected officials and prevailing thought in the political world and to intimidate citizens from expressing their political opinions and beliefs.

103.   The Defendants, acting in concert, broke into Massaquoi's house at around 5:45 AM on June 10, 2021, to intimidate by Massaquoi and other U.S. citizens from exercising their right to peaceably assemble if their viewpoints disagree with the prevailing thoughts and consensus among political elites.

104.   The Defendants, acting in concert, broke into Massaquoi's house at around 5:45 AM on June 10, 2021, to intimidate by Massaquoi and other U.S. citizens from petitioning their government for redress of grievances if their viewpoints disagree with the prevailing thoughts and consensus among political elites.

105.   Defendants' actions against Massaquoi and others similar situated were acts of threat and intimidation to warn U.S. citizens to conform and obey to an all-powerful government establishment.

106.   Plaintiff Massaquoi and those similarly situated have the civil and constitutional rights as guaranteed by the First Amendment of the U.S. Constitution to free expression of ideas,

most of all for criticism of their elected leaders and governmental servants, of peaceable assembly, and to petition their government for redress of grievances.

107.    The Defendants, acting in concert, are retaliating against and seeking to further retaliate against the Plaintiff Massaquoi and those similarly situated for their expression of political viewpoints at the January 6, 2021 demonstrations in Washington, D.C. and generally.

108.    By contrast, Defendants, acting in concert, allowed a year of violent left-wing riots, insurrection, arson, attempted murder, murder, assault and battery to burn out of control across the country, including in Washington, D.C., as radical revolutionaries and self-described trained Marxists pursued baseless and unfounded conspiracy theories and violent actions, including assault and battery and murder of innocent U.S. citizens and law enforcement.

109.    The tolerance of the Defendants to the year of insurrection from leftist anarchists, who as just one example repeatedly attacked a federal courthouse and attempted to burn the federal courthouse down with judicial personnel inside, contrasted with the Defendants actions in this case demonstrate malice and highlight that the actions and motivations of the Defendants, acting in concert, are improper motivations and actions of political retaliation against the Plaintiff and those similarly situated.

110.    The totality of the circumstances demonstrates that the Defendants are not motivated to enforce the law but instead to persecute political opinions of persons with whom they disagree.

111.    The fact that the Defendants, acting in concert, seized two red MAGA caps from Plaintiff Massaquoi's house further demonstrates that the Defendants actions are political and malicious and that the Defendants' justifications.  (Special Agent Warren noted the seizure of one MAGA hat on the receipt, but in fact there were two hats seized.)   Because of the enormous number of MAGA hats in circulation, they in particular are not probative evidence. Massaquoi

owning a MAGA hat is not useful evidence because of the sheer number of MAGA hats in the country. But Defendants' seizing Massaquoi's MAGA hats is a perfect illustration of the true motive, ill-intent, and message of these politicized unconstitutional actions.

112.   These violations of the Constitution are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

113.   The Defendants, acting in concert, are being sued in their individual capacities.

114.   The actions complained of by the Defendants were violations of the Plaintiffs' constitutional rights.

115.   By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiff has suffered harm in the form of having his First Amendment rights violated, his personal, business and property rights have been violated, and his and his freedom of speech and association have been severely comprised and curtailed, guaranteed to Plaintiff and other members of the class under the U.S. Constitution.

## SECOND CAUSE OF ACTION
### *(Bivens – Fourth Amendment Violation)*

116.   Plaintiff repeats and re-allege all of the previous allegations of the entirety of this Complaint, including in other causes of action, and incorporate them herein in support of this count with the same force and affect, as if fully set forth herein again at length.

117.   Plaintiff enjoys the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the U.S. Constitution.

118.   Plaintiff enjoys the right to be free of the issuances of warrants without probable cause.

119.   Defendants, acting under color of federal authority and in concert, violated Plaintiff Massaquoi's Fourth Amendment rights by seizing Massaquoi and interrogating him in the early morning of June 10, 2021, with an armed team of FBI with guns drawn.

120.    Defendants, acting under color of federal authority and in concert, violated the Fourth Amendment rights of Plaintiff Massaquoi by searching Plaintiff's home and seizing his computers, computer files, storage devices, electronic devices without probable cause and/or other legal justification.

121.    Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of his constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

122.    As a direct and proximate result of the violation of Plaintiffs' constitutional rights, Plaintiffs suffered damages and the loss of his constitutional liberties.

123.    These violations are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

124.    The Defendants, acting in concert, are being sued in their individual capacities.

125.    The actions complained of by the Defendants were violations of the Plaintiffs' constitutional rights.

126.    By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiff has suffered harm in the form of having his Fourth Amendment rights violated, his business and property rights have been violated, and his freedom of speech and association have been severely comprised, guaranteed to Plaintiff under the U.S. Constitution.

## THIRD CAUSE OF ACTION
### *(Bivens – Fifth Amendment Violation)*

127.    Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including in other causes of action, and incorporate them herein in support of this count with the same force and affect, as if fully set forth herein again at length.

128.    Plaintiff enjoys the right to be free from being compelled to testify against himself

as guaranteed by the Fifth Amendment to the U.S. Constitution.

129.    Defendants, acting under color of federal authority, violated Plaintiff Massaquoi's Fifth Amendment rights by handcuffing him, intimidating, lying to and seizing Massaquoi's property and interrogating him in the early morning of June 10, 2021, with an armed team of FBI with guns drawn, even after he asked to speak to an attorney.

130.    These violations are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

131.    The Defendants, acting in concert, are being sued in their individual capacities.

132.    The actions complained of by the Defendants were violations of the Plaintiffs' constitutional rights.

133.    By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiff has suffered harm in the form of having his Fifth Amendment rights violated, his personal business, and property rights have been violated, and his and his freedom of speech and association have been severely comprised, guaranteed to Plaintiff under the U.S. Constitution.

### FOURTH CAUSE OF ACTION
*Violation of the Privacy Act*
*Plaintiff Massaquoi Only*

134.    Plaintiff repeats and re-allege all of the previous allegations of the entirety of this Complaint, including in other causes of action, and incorporate them herein in support of this count with the same force and affect, as if fully set forth herein again at length

135.    Defendant are unlawfully withholding records and property requested by Plaintiff's Privacy Act Request pursuant to 5 U.S.C. § 552(a) as set forth in Exhibit 1, which is incorporated herein by reference.

136.    Plaintiff is being irreparably harmed by reason of Defendants' unlawful withholding of requested records and property, and Plaintiff will continue to be irreparably

harmed unless Defendants are compelled to conform its conduct to the requirements of the law

## VIII.   PRAYER FOR RELIEF

WHEREFORE, lead Plaintiff Massaquoi respectfully requests the certification of a class consisting of those who like him are being terrorized, chilled in the exercise of their rights, harassed, investigated and targeted by these Defendants for peacefully expressing political opinions disliked by the predominantly leftist political elite, through Defendants' campaign of intimidating search warrants and even arrests. The same Defendants look the other way from actual insurrection, arson, violence, rioting, murder, attempted murder, assault and battery, destruction of government property, and more through years of left-wing anarchy.

Plaintiff and Members of the Class prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, in an aggregate amount in excess of $3.5 billion U.S. Dollars and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them, acting in concert, against Plaintiff  and Members of the Class.

Moreover, Plaintiff Massaquoi requests the issuance of preliminary and permanent injunctions ordering the immediate return of the Plaintiff's property and injunctions to restrain the intimidation and chilling of the rights himself  of the other Members of the Class.

## DEMAND FOR JURY TRIAL

**Plaintiff and the other Members of the Class demand a trial by jury on all counts as to all issues and counts so triable.**

Dated:  February 1, 2022                              Respectfully submitted,

SIAKA MASSAQUOI
C/O 269 S. BEVERLY DRIVE #1298
BEVERLY HILLS, CA, 90621
TEL: 3107507362
EMAIL: SIAKAMASSAQUOI@GMAIL.COM

*Plaintiff Pro Se*

LARRY KLAYMAN, ESQ.
FREEDOM WATCH, INC.
7050 W. PALMETTO PARK RD
BOCA RATON, FL, 33433
TEL: 561-558-5336
EMAIL: LEKLAYMAN@GMAIL.COM

*Of Counsel/ Pro Hac Vice To be Filed*


*I HEREBY CERTIFY that I have served by U.S. First Class Mail this 1ˢᵗ day of February, 2022, this Amended Complaint on all counsel of record.*

*Siaka Massaquoi*

# PLAINTIFF'S

# EXHIBIT

# 1

7/14/2021                                Gmail - Fwd: cert of id.pdf

 **Gmail**                                      **Oliver Peer <oliver.peerfw@gmail.com>**

---

## Fwd: cert of id.pdf

---

**Larry Klayman** <klaymanlaw@gmail.com>                           Tue, Jun 29, 2021 at 6:39 PM
To: "Nielsen, Katherine (CRM)" <katherine.nielsen@usdoj.gov>
Cc: Siaka Massaquoi <siakamassaquoi@gmail.com>, Asher Anderson <asher.b.anderson@gmail.com>, Oliver Peer
<oliverpeerfw@gmail.com>

Dear Ms. Nielsen:

Pursuant to the Privacy Act, 5 U.S.C. ch. 5 section 552a et seq. please immediately provide to me any and all documents
that refer or relate to my client Siaka Massaquoi including but not limited to Section 302 reports, affidavits etc. In addition,
please provide by this Friday's close of business any and all property that was seized from him by the FBI. The
agency has listed the property which it seized.

Attached is authorization from Mr. Massaquoi to provide this documentation and property to me as his counsel.

Please contact me to arrange for delivery to me in advance of close of business this Friday.

Thank you for your immediate cooperation.

Larry Klayman, Esq.
Counsel for Mr. Siaka Massaquoi

---------- Forwarded message ---------
From: **Siaka Massaquoi** <siakamassaquoi@gmail.com>
Date: Tue, Jun 29, 2021 at 6:26 PM
Subject: cert of id.pdf
To: Larry Klayman <klaymanlaw@gmail.com>, Asher Anderson <Asher.b.anderson@protonmail.com>,
<leklayman@gmail.com>

Here you go

---

📄 **cert of id.pdf**
     1244K